**AMERICAN SUGAR REFINING CO. v. NASSIF.**

No. 2468.

Circuit Court of Appeals, First Circuit.

Nov. 26, 1930.

322

John W. Coughlin, of Boston, Mass. (of Sawyer, Hardy, Stone & Morrison, of Boston, Mass., on the brief), for appellant.

Charles W. Lavers, of Boston, Mass., for appellee.

Before BINGHAM and WILSON, Circuit Judges, and HALE, District Judge.

HALE, District Judge.

In this case the plaintiff seeks to recover damages for personal injuries alleged to have been sustained by him on September 11, 1926, while he was engaged as a laborer in the hold of a vessel from which a cargo of raw sugar was in process of being unloaded while the vessel was moored at a dock in South Boston, Mass. The declaration alleges that, while the plaintiff was in the employ of the defendant and engaged in the hold of a steamship under the control of the defendant, and unloading bags of sugar from the hold, and while the vessel was lying at the defendant's wharf in Boston, and while in the exercise of due care, he was greatly and permanently injured by the negligence of defendant and its servants and agents; whereby, because of the defendant's equipment being in improper, weak, and unsafe condition, and because of the defendant's lack of supervision and care in superintending the work in which plaintiff was then engaged, the rope sling, by which bags of sugar weighing upwards of a thousand pounds were being lifted and swung from the hold in which the plaintiff was working, parted and broke; and the bags of sugar then being hoisted fell a great distance upon the plaintiff with force and violence, thereby greatly injuring the plaintiff.

The defendant pleaded a denial of each and every allegation of the plaintiff's declaration, and further that, at the time and place alleged, the plaintiff was guilty of contributory negligence, and that he also assumed the risk of injury, and further that on September 21, 1926, the plaintiff executed a release discharging all causes of action against the defendant for the claim sued on.

There was a trial by jury and a verdict for the plaintiff for $6,000. The case is now before us on the defendant's exceptions, first, to the failure of the trial judge to direct a verdict for the defendant; second, to the admission and exclusion of certain testimony; third, to the refusal of the trial judge to give certain requested rulings; and, fourth, to certain parts of the charge. In the exceptions and the assignment of errors the defendant contends that final judgment for the defendant should be ordered,

(a) In that the plaintiff failed to prove negligence on the part of the defendant.

(b) In that the plaintiff assumed all obvious risks and dangers incidental to his work.

(c) In that, if any negligence was shown, it was the negligence of a fellow servant, for which the defendant is not liable.

(d) In that the release duly executed by the plaintiff is a bar to recovery by him.

There are twenty-nine assignments of error.

The plaintiff's declaration, as we have seen, alleged negligence of the defendant and damages to the plaintiff by reason of such

negligence, but said nothing about the Federal Employers' Liability Act or any of the federal statutes. The case, however, was tried and submitted to the jury upon issues raised by the Federal Employers' Liability Act of April 22, 1908 (45 USCA §§ 51–59). That act provides:

"Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

In sections 3 and 4 of the act (45 USCA §§ 53, 54), it is provided that, in actions brought under or by virtue of the provisions of the act, an employee injured or killed should not be held to have been guilty of contributory negligence or to have assumed the risks of his employment "in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

The section in regard to diminution of damages relating to contributory negligence, Act of April 22, 1908, c. 149, § 3, 35 Stats. 66 (45 USCA § 53), provides as follows:

"In all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: Provided, That no such employee who may be injured or killed shall be held to have been guilty

of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

By the Act of June 5, 1920, c. 250, § 33, 41 Stat. 988–1007 (46 USCA § 688), it is provided that:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply."

At the trial of the case at bar, when evidence was offered directed to issues arising under the federal statutes, no objection was taken to the declaration on account of its not pleading those statutes. The whole case was tried upon issues raised under such statutes. In his charge to the jury the presiding judge assumed that the case was presented under them.

In Central Vermont Ry. Co. v. Perry, 10 F.(2d) 132, 134, this court assumed that a declaration had been amended to conform to the issues tried. In speaking for the court, Judge Bingham said: "The plaintiff's declaration charged negligence only. The ground on which the case was submitted to the jury was not negligence, but the breach of a duty or duties claimed to be imposed upon the carrier by the Safety Appliance Act and its supplements [45 USCA § 1 et seq.]. No objection, however, was taken to the declaration on this account, and it may be regarded as amended to conform to the issue tried."

In the case before us no objection was taken to the reception of evidence made admissible by the federal statutes, nor to the assumption by the court that the case was being tried under federal statutes. We therefore regard the declaration as amended to conform to the issues tried.

Plaintiff puts his case upon testimony tending to show that at the time of the injury the plaintiff was working in the hold of a steamship engaged in maritime commerce and lying at a wharf in South Boston under control of defendant, and that, while engaged in such maritime employment, he was within the provisions of the federal statutes; that at the time of the injury the plaintiff was making up loads, with others, on the inshore side, and that the load which he was making up consisted of four bags

of sugar weighing 350 pounds each; that at the time of the injury such a load had gone off on the offshore side; that the plaintiff was watching it clear the deck and was engaged in making up another load which it was his job to have ready when the falls came down; that while he was so engaged he was struck by one or more of the bags of sugar and was injured; that the loads were raised by falls attached to a winch in charge of the defendant's foreman; that, in hoisting the sugar, the bags of which fell on the plaintiff, the load was caused to strike against and under the coaming of the hatch, so violently as to break the sling encircling it; that the sling was not of sufficient strength to withstand the strain when it was being pulled against the hatch coaming; that the sling consisted of a length of rope with the two ends spliced, the bags for a load being placed upon the strands and one loop end being drawn through the other and around the bags.

Plaintiff's case is based upon the alleged negligence of the defendant's foreman in charge of the winch at the time of the injury. By the federal statutes the liability imposed upon the defendant for injuries includes those caused by the negligence of a fellow servant. It appears—and we do not find that it was denied at the trial—that the plaintiff was employed upon a vessel engaged in maritime service, and that he was a seaman within the meaning of the federal statutes. In International Stevedoring Co. v. Haverty, 272 U. S. 50, 51, 47 S. Ct. 19, 71 L. Ed. 157, speaking for the court, Mr. Justice Holmes cited the Act of June 5, 1920, and said:

"It is not disputed that the statutes do away with the fellow servant rule in the case of personal injuries to railway employees. Second Employers' Liability Cases, 223 U. S. 1, 49, 32 S. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44. The question therefore is how far the Act of 1920 should be taken to extend. * * *

"The work upon which the plaintiff was engaged was a maritime service formerly rendered by the ship's crew. Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 62, 34 S. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157. We cannot believe that Congress willingly would have allowed the protection to men engaged upon the same maritime duties to vary with the accident of their being employed by a stevedore rather than by the ship. The policy of the statute is directed to the safety of the men and to treating compensation for injuries to them as properly part of the cost of the business. If they should be protected in the one case they should be in the other. In view of the broad field in which Congress has disapproved and changed the rule introduced into the common law within less than a century, we are of opinion that a wider scope should be given to the words of the act, and that in this statute 'seamen' is to be taken to include stevedores employed in maritime work on navigable waters as the plaintiff was, whatever it might mean in laws of a different kind."

In the instant case the record discloses evidence of the negligent operation of the winch. The best description of the proper method of raising it was given by one of the defendant's witnesses who testified that the control of the raising of the load was in the winchman; that it ordinarily went right up through the hatch on the deck; that when a load swung, the winchman would usually stop the load, steady it in the center and then take it up again; that this load swung inshore; and that, when the load swings under or against the coaming the winchman backs it right up. By the testimony of this witness, it appears that the load swung; that the winchman did not stop it, and did not back it up when it struck against the coaming. The testimony upon this point is persuasive to us that there was sufficient evidence to support the finding of the jury that the load which fell upon the plaintiff was not being raised by the foreman in the proper way, and that, if it had been properly hoisted, it would not have swung under and against the hatch coaming whereby the sling was broken and the bags fell; and that the sling was not made of rope strong enough to withstand the strain of operating the falls and the load in the manner in which they were then being operated by the foreman. We think there was clear evidence of negligence on the part of the winchman.

The appellant alleges that the plaintiff is shown to have been guilty of contributory negligence. Under the provisions of the Employers' Liability Act (45 USCA §§ 51–59), contributory negligence is not a defense, but, if it exists, it is to be considered by the jury by way of diminution of damages.

All questions of fact relating to this subject were properly submitted to the jury. We think Judge Letts charged fully and adequately on all questions of negligence and contributory negligence. He charged that, in the event the plaintiff's negligence was the entire cause of his injury, he was entitled to

no damages and no recovery; that, in order to recover, the plaintiff must show negligence on the part of the defendant in respect to the operation of the winch by the foreman. He properly directed the jury's attention to the manner in which the winchman hoisted the load when it came in contact with the coaming of the ship.

He charged properly that contributory negligence is no defense in this action under the federal statutes under which it is brought; but that it may be taken into account and shown for the purpose of reducing the amount of damages. And he concluded his ruling on that subject thus: "If you find that there were two parties negligent, any sum that you would regard as the proper award in the absence of negligence on the part of the plaintiff, would be reduced by the amount that his own negligence had contributed to the result."

Certain assignments of error touching the question of negligence were based upon requests for rulings by the court. The court ruled upon the subject of negligence and contributory negligence. No errors in such rulings were pointed out, and no exceptions were taken. We find no merit in the assignments of error on the subject of either negligence or contributory negligence.

▮▮▮ Among other things, the appellant requested the court to charge the jury that, if they found (1) that the work was being performed in the usual way that such work was done, then they must find that what occurred was an open and obvious risk which the plaintiff assumed; (2) that the plaintiff was injured by reason of the negligence of a fellow servant, then they must find for the defendant; and (3) that the plaintiff was injured by reason of an unavoidable accident, he is not entitled to recover.

The court charged the jury as follows:

"I don't hesitate to say to you that there is not any evidence in this case whatever of either defective or improper equipment on board that ship used in conjunction with the unloading of its cargo of sugar. The case centers entirely upon the question as to whether the man who operated that winch was negligent in the manner in which he hoisted this particular load of sugar when it came in contact with the combing of the deck of the ship, breaking the sling, and the bags fell below. ⋮ ⋮ Was there any negligence on the part of the defendant or its agents, specifically the winchman? If there was not, you will proceed no further."

Under the Federal Liability Act (45 US CA §§ 51–59), a plaintiff does not assume the risk of injury due to the negligence of a fellow employee, for that act makes the employer liable for the negligence of a fellow employee. International Stevedoring Co. v. Haverty, 272 U. S. 50, 51, 47 S. Ct. 19, 71 L. Ed. 157; Second Employers' Liability Cases, 223 U. S. 1, 49, 32 S. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44. As the ground of negligence here relied upon, and the only one upon which the case was submitted to the jury, was the negligence of the winchman, a fellow employee, the plaintiff did not assume the risk of such negligence, and the first and second requests were properly denied.

Then, again, the first and third requests, though not given in terms, were given in substance and effect, for, as above pointed out, the court charged the jury that the case depended entirely upon whether the employee who operated the winch was negligent in the manner in which he hoisted the particular done [that is, not negligently], he assumed load of sugar, and that, if he was not negligent in that particular, then there could be no recovery. This was in substance telling the jury that, if the plaintiff was injured by reason of "unavoidable accident" he could not recover; also that, if the work was being performed in the "usual way such work was the risk." It was not necessary that these requests be given in the language requested, they having been given in substance. The defendant takes nothing by these exceptions.

▮▮▮ It is urged that a certain release duly executed by the plaintiff is a bar to his recovery. Under the federal statutes it is clear that such release, even if proper in form and not void by statute, may be found by the jury to have been signed under such circumstances as not to be effective. The release is alleged by the appellant to have been obtained by the Employers' Liability Assurance Corporation as its representative. That company was brought into the case by the appellant itself; the conduct of its agent in obtaining the release was pertinent on the issue of its validity. The record shows under what circumstances the signature of the plaintiff was obtained by the employee of the insurance company.

The charge of the court was substantially that, if the representative of the insurance company fairly and conscientiously explained the terms of the release, that was all that was required to make the release effective.

Certain assignments of error upon this point are urged, based upon requests for in-

structions on questions relating to the release. We think the presiding judge adequately charged the jury relating to these questions, and no exceptions were taken to his specific instructions. We find no merit in the assignments of error touching the release.

After instructions by the court on matters relating to the release, the special question was submitted to the jury: "Did the representative of the Employers' Liability Assurance Corporation, Ltd., disclose to the plaintiff all the terms and provisions of the instrument signed," and the record shows, "The jury answer 'No.'" Under the testimony and the instructions of the court touching the release, we find no error on the part of either the court or the jury.

The first four assignments of error assert that the court erred in denying defendant's motions with regard to admitting certain testimony relating to what plaintiff earned after the injury, and how he earned it. These questions clearly related to the amount of damages to be recovered.

The court charged properly and sufficiently, calling the jury's attention to the question of wages, loss of wages, and to the work which plaintiff had done, as bearing upon the question of his loss of wages. No exception was taken. We find no merit in the assignments of error upon this matter.

The twenty-ninth assignment of error alleges that the court erred in its charge in making the following statement:

"I am perfectly frank in saying I do not believe the Employers' Liability Assurance Corporation have won any medals for generosity in the manner in which they have performed their part of this agreement with Nassif, if it be an agreement. I have no words of commendation or praise for the extent of the generosity as shown by them in keeping the spirit of that undertaking."

This comment upon the evidence may be regarded as an expression of opinion. Such expression was not error provided the jury were told that in the end their judgment on the subject must prevail. We think the court gave proper instructions to the jury, that their judgment was final upon all questions of fact, and that there is no merit in this assignment of error.

Most of the assignments of error were based upon requests for instructions made by the appellant. Upon examination of the charge of the trial judge, it appears that he gave substantial instructions upon the requests submitted, and denied the requests in so far as they had not already been covered in the charge. The appellant took no exceptions, and failed to point out any errors in the charge upon the several requests.

The federal courts hold firmly to the doctrine that no duty rests upon the appellate court to assume the burden of relating requested instructions to those actually given in the charge, in order to determine whether the trial court was in error. For many years the rule of the Supreme Court has been that a party must make every reasonable effort to secure from the trial court correct rulings, or such as are satisfactory to him, before he will be permitted to ask any review by an appellate tribunal. To that end he must be distinct and specific in his objections and exceptions. Fairness to a trial court requires that the attention of that court shall be specifically called to the precise point to which exception is taken, in order that it may have an opportunity to reconsider the matter and remove the ground of exception. Harvey v. Tyler, 2 Wall. 328, 339, 17 L. Ed. 871; Allis v. United States, 155 U. S. 117, 122, 15 S. Ct. 36, 39 L. Ed. 91.

In Partridge v. Boston & Maine Railroad Company, 184 F. 211, 215, this court had before it a large number of requests for instructions and assignments of error based upon those requests. With reference to the request, the bill of exceptions stated:

"The defendant excepted to the charge of the court as far as the instructions given were inconsistent with the requests for rulings."

In speaking for the court Judge Putnam said:

"It is settled in the federal courts that the court is not required to take notice of this form of exception. It is impossible for the court to go through and analyze the instructions given, and arrange them with the requests for rulings in parallel columns; that is a burden which every court which has regard for the successful result of its labor refuses to undertake."

The judgment of the District Court is affirmed, with interest and costs to the appellee.